75368. CONTINENTAL CORPORATION v. DEPARTMENT OF TRANSPORTATION.
(366 SE2d 160)

BEASLEY, Judge.

This condemnation appeal is from the second trial, which was prompted by *Continental Corp. v. Dept. of Transp.*, 172 Ga. App. 766 (324 SE2d 588) (1984), wherein the background facts are set out.

1. Enumerations 1, 2, and 4 deal with condemnee Continental's claims that the trial court erred in several respects relating to the issue of lost rentals.

The original declaration of taking was against both owner Continental and lessee American Dairy Queen Corporation. A fast food restaurant was operated on the property until 1979 when it was closed for reasons unrelated to the later condemnation. Dairy Queen continued to pay rent and property taxes until the condemnation taking in 1981.

During the first trial, Continental sought a determination by the court that the lease was not subject to termination based on the condemnation, thus preserving its right to rentals from Dairy Queen for the term of the lease. The lease allowed termination if the property or "any substantial part thereof" was taken or condemned. The trial court found "as a matter of fact that the taking described in this eminent domain proceeding constitutes a substantial part of the land and the improvements thereon . . . and, . . . under the language of Paragraph 20 . . . American Dairy Queen had the right to exercise its option to terminate said Lease. . . . [;] that the Department of Transportation through this action of eminent domain has taken a substantial part of the demised premises and as such American Dairy Queen Corporation had the right under said Lease to terminate the Lease as of the date the Department . . . required possession of the condemned property . . . [;] American Dairy Queen Corporation timely and properly exercised the option to terminate . . . ."

In the first appeal, this Court was asked to address the issue of these findings being put before the jury. Id. at 768 (3). The ruling that there had been a substantial taking which would permit Dairy Queen to terminate the lease was not appealed.

During the second trial, Continental moved for a directed verdict at the close of all evidence as to the issue of condemnor's liability for lost rents, on the ground that the court order in the first trial was the "law of the case." Its denial is enumerated as error, as are the trial court's failure to give a jury instruction on the court's findings, and its

denial of the motions for new trial and judgment notwithstanding the verdict on this ground.

First of all, the requested jury instruction was given. Second, the "law of the case rule" has formally been abolished except as it applies to rulings by one of the appellate courts; they are binding in all subsequent proceedings, including a second trial. OCGA § 9-11-60 (h); *Westinghouse Elec. Corp. v. Rider*, 168 Ga. App. 136, 138 (2) (308 SE2d 378) (1983). Nevertheless, the earlier ruling by the trial court on whether the taking was substantial enough to allow the termination of the lease was not appealed and is not the question. What is at issue is whether that ruling gives condemnee the right as a matter of law to recover rents lost as a result of the termination. It does not, because the latter does not necessarily follow from the former. More must be established.

There are two elements of just and adequate compensation for a partial taking of property by condemnation: (1) the market value of the portion actually taken, and (2) the consequential damage, if any, to the remainder. *Simon v. Dept. of Transp.*, 245 Ga. 478 (265 SE2d 777) (1980). The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstances just prior to the time of the taking compared with its market value in its new circumstance just after the time of taking. *Wright v. MARTA*, 248 Ga. 372, 376 (283 SE2d 466) (1981).

Condemnee relies for its position on *Carasik Group v. City of Atlanta*, 146 Ga. App. 211 (246 SE2d 124) (1978). KFC, the lessee and operator of a restaurant, contended in the condemnation proceeding that it was entitled to a termination of its lease due to the condemnation by the city of a portion of the premises, including five parking spaces. It was held that the trial court was authorized to determine the question of the contract rights between the two competing condemnees and that it correctly concluded that the lease was properly terminated as a result of the partial taking. Where it erred, however, was in concluding as a matter of law that lessor was not entitled to damages arising from the lease termination. This court ruled that, since there was a lease termination, "the lessor, as the fee simple owner, has been further damaged by the taking." *Carasik*, supra at 216. *Carasik* did not hold that the damages would necessarily be the lost rent. For one thing, mitigation would have to be considered, and that was not limited, as a matter of law or under the evidence in this case, to efforts to find a replacement tenant.

In a partial taking, the loss of a lease and the resulting loss of rental payments are not properly considered as damages as it relates to the actual property taken. *Budd Land Co. v. Valdosta*, 165 Ga. App. 534 (301 SE2d 699) (1983), citing *State Hwy. Dept. v. Hood*, 118 Ga. App. 720 (165 SE2d 601) (1968).

In *Hood*, DOT took a 33-acre strip from a 290-acre parcel, of which 200 acres were leased to a dairy operation. The taken property went through the remainder. There was evidence that the rental had been reduced and that the tenant would not renew the lease at its termination because of the changed condition of the property. The judge instructed the jury that if they found the owner was damaged by loss of all or part of the rental, he was entitled to recover "such loss of rent as a separate item of damages additional to the value of the property actually taken."

In reversing, this court held: "The quoted charges were equivalent to an instruction that the jury might award compensation for the 33.8 acres of land actually taken *plus* any loss of income attributable to the taking. The court elsewhere . . . instructed the jury regarding their duty to award consequential damages, if any to the land remaining . . . . Let us examine the land here prior to the condemnation. The value of the land to the owner is the intrinsic value of the land itself. It will demand a certain price in the market place because it is suitable for certain uses by an owner or for rental for certain purposes, e.g., dairying or growing crops, or some other use. This is an important consideration in determining its market value. But the point is that when the owner of such land is compensated for the value of the land taken, at whatever that value may be, he is made whole. Likewise, when there is a remainder and the owner is compensated for its change in market value, if any, as a result of the taking, he is made whole. Rental value or diminished rental value for any purpose is no basis for compensation, or to be considered, *except insofar as it helps to establish the property's market value.* [Cits.]" *Hood,* supra at 721-722. (Emphasis in original.) See *DeKalb County v. Queen,* 135 Ga. App. 307, 311 (10) (217 SE2d 624) (1975).

Thus, the trial court was correct in denying the motions for directed verdict, new trial, and jnov.

2. Condemnee enumerates as error the following objected-to jury charge: "In the event the condemnee . . . has any consequential damages as a result of the condemnation, then Continental Corporation is required to mitigate any such consequential damages *in any way it can.*" Condemnee contends that the standard for mitigation is "as far as practicable by the use of ordinary care and diligence." OCGA §§ 51-12-11 and 13-6-5. It points out that a case cited in our first opinion describes this as "reasonable steps."

In that prior appearance of this case, it was held that since this charge "was both a correct statement of the law and adjusted to the evidence, it was not error to give it." Condemnee contends that this was obiter dictum and not binding. The statement was the ruling of the court, necessary to the decision and binding. OCGA § 9-11-60 (h). Moreover, the wording was harmless, even if too broad, because the

only mitigation theory asserted by condemnor was a re-striping of the parking lot so as to recoup the lost spaces. This could not be regarded, as a matter of law, as unreasonable or beyond the cited code sections insofar as they apply to condemnation mitigation. See *Dept. of Transp. v. Ladson Investments*, 158 Ga. App. 687, 690 (3) (282 SE2d 171) (1981); *Garber v. Housing Auth. of Atlanta*, 123 Ga. App. 29, 31 (3) (179 SE2d 300) (1970).

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JANUARY 26, 1988 —
REHEARING DENIED FEBRUARY 12, 1988 —

*J. Corbett Peek, Jr., James G. Peek*, for appellant.

*Michael J. Bowers*, Attorney General, *E. Hearst Roane, Jr.*, for appellee.