A08A0369. IH RIVERDALE, LLC et al. v. MCCHESNEY CAPITAL PARTNERS, LLC et al.
(666 SE2d 8)

MIKELL, Judge.

This is the second appearance of this case before this Court. In *IH Riverdale, LLC v. McChesney Capital Partners* ("*IH Riverdale 1*"),[1] we held, inter alia, that the trial court correctly denied plaintiffs' ("IH") motion for summary judgment on its claim that it was entitled to a five percent quarterly distribution of profits under the parties' operating agreement, given that the defendants ("MCP") had amended the agreement to eliminate the fee.[2] After the remittitur was entered, MCP, whose motions for summary judgment and for reconsideration of summary judgment on that issue had been denied before the appeal, moved for the entry of an order on the motion for reconsideration. IH filed a cross-motion for partial summary judgment. The trial court granted MCP's motion and denied IH's motion. IH appeals, asserting, in four enumerations of error, that at a minimum, jury issues exist concerning the five percent cash distribution and the validity of the amendment; that the trial court's construction of the contract renders certain provisions a nullity and ignores its plain language; and that if the contract is ambiguous, extrinsic evidence proves that the parties intended for MCP to pay IH the cash distribution and for the consent of both parties to be required for the major decisions contained in the amendment. We affirm.

We recite below so much of *IH Riverdale 1* as is relevant to this appeal.

The . . . agreement provides that quarterly distributions of

---

[1] 280 Ga. App. 9 (633 SE2d 382) (2006).
[2] Id. at 14-15 (2).

"distributable cash" shall be made on the following basis: 5 percent to IH as its "guaranty 'profits' distribution," 5.32 percent to IH, and 89.68 percent to McChesney:

> Any Distributable Cash from any event other than a Capital Event and after payment of any accrued and unpaid one percent guaranty fee pursuant to Section 5.11 (f) shall be distributed to the Members, on a quarterly basis, five percent (5%) to IH as its guaranty "profits" distribution, five and thirty-two hundredths percent (5.32%) to IH and eighty-nine and sixty-eight hundredths percent (89.68%) to McChesney. Such distributions, excluding the guaranty "profits" distribution received by IH, shall be applied to reduce the accrued but previously unpaid Preferred Return.

> . . .

But amendments to the agreement were authorized if they were "in writing and signed by the Members holding at least a Majority Interest in the Company." And a "Majority Interest in the Company" was defined in the agreement as "Ownership Interests of Members which, taken together, shall exceed eighty percent of the aggregate of all the Ownership Interest of the Members." MCP owned 94.68 percent of the Ownership Interests in the venture. And, on July 11, 2003, MCP voted to amend the agreement between the parties. The amendment deleted all references to the five percent fee payable to IH.

IH has failed to explain why it should be entitled to the five percent fee given that the agreement was amended to eliminate the fee. For that reason alone, the trial court did not err by denying IH's motion for summary judgment on this issue.[3]

The trial court's summary judgment order that was the subject of *IH Riverdale 1* was issued on July 22, 2005. MCP filed a motion for reconsideration on August 8, 2005, seeking a declaration that the amendment to the operating agreement was valid. In an order filed on August 17, 2005, the court held that MCP had the right to amend the agreement but that issues of fact remained as to whether the

---

[3] Id.

percentage interest could be adjusted without unanimous consent of the "members," or parties to the agreement. In the interim, IH filed a notice of appeal, so the trial court declared its order of August 17 void. Following our opinion in *IH Riverdale 1* affirming the denial of summary judgment to IH on the profits' distribution issue, MCP renewed its motion for reconsideration. IH moved for partial summary judgment, arguing once again that MCP's amendment to eliminate the five percent distribution was void as a matter of law. After oral argument, during which the trial court interpreted our ruling to mean that MCP had the right to amend the agreement to eliminate the distribution, the court entered an order granting MCP's motion and denying IH's motion.

On appeal, IH contends that the trial court erroneously interpreted *IH Riverdale 1* to mean that MCP was entitled to summary judgment on this issue. IH asserts that we affirmed the denial of its motion for summary judgment based on a perceived lack of evidence; that IH supplied additional evidence in the form of the affidavit of Geoffrey Nolan, who is IH's sole member; and that the trial court ignored the affidavit in denying its motion and granting MCP's motion. MCP argues that the "law of the case" rule controls this appeal.

Under OCGA § 9-11-60 (h), "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." "The 'law of the case' rule, though formally abolished, still applies to rulings by one of our appellate courts in a particular case; such rulings are binding in all subsequent proceedings in the same matter."[4] An exception exists where the evidentiary posture of the case changes in the trial court after the appellate court decision.[5] "The evidentiary posture of a case changes so as to bar application of the law of the case rule . . . when the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented."[6]

In the case at bar, the only evidence IH submitted following our opinion was Nolan's affidavit. In the affidavit, Nolan states, inter alia, that the five percent distribution was intended to compensate IH for Nolan's guaranty of the construction loan; that MCP removed Nolan as guarantor without his consent, which MCP was not empowered to do under the agreement; and that he never would

---

[4] *Lowman v. Advanced Drainage Systems*, 228 Ga. App. 182, 183 (491 SE2d 427) (1997).

[5] *May v. Macioce*, 200 Ga. App. 542, 544 (2) (409 SE2d 45) (1991) (amendment of complaint changed evidentiary posture of case).

[6] (Citations omitted.) *McLean v. Continental Wingate Co.*, 222 Ga. App. 805, 807 (1) (476 SE2d 83) (1996); accord *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629 (1) (493 SE2d 196) (1997).

have agreed to be removed as guarantor without assurances that the profits distribution to IH was permanent. The first issue in this case is whether the affidavit demanded summary judgment for IH. We conclude that it did not. Nolan gave similar testimony in a 2004 deposition, which predated the trial court's order on this issue, stating his "understanding" of the fee to mean that he would receive five percent "of every dollar profit or residual from day one until the end of the partnership." Further, in its initial brief in *IH Riverdale 1*, IH argued that the language of the agreement was plain, unambiguous, and capable of only one meaning: that the distribution was payable regardless of the existence of the guaranty. Specifically, IH argued:

> From a practical perspective, no guarantor of an $11.8 million construction loan would ever agree to a cessation of its profit position upon removal as guarantor, because such an agreement would effectively nullify the right to participate in the profits, which are only realized once the project is complete.

Given the similarity of the arguments and evidence presented in the current and previous appeals, the evidentiary posture of the case has not changed by the addition of the affidavit. There is a second reason why the evidentiary posture of the case has not changed: the affidavit is parol evidence, which a court may not consider unless an ambiguity exists in the contract.[7] There is no ambiguity in the agreement. The "law of the case" rule controls the denial of IH's motion for partial summary judgment on this issue.

The next issue is whether the trial court properly granted summary judgment to MCP. The order states that the court "hereby finds as a matter of law that the [a]mendment is valid and enforceable and included the 5% guaranty 'profits' distribution." IH argues that the trial court misinterpreted our ruling in *IH Riverdale 1* as requiring the grant of summary judgment to MCP. We disagree. Whether or not our ruling in *IH Riverdale 1* mandated summary judgment for MCP, the trial court correctly granted it. The construction of a contract is initially a matter of law for the court.[8] The court must first decide whether the language of the contract is unambiguous.[9] "Where the terms of a written contract are clear and unam-

---

[7] See *4 G Properties, LLC v. GALS Real Estate*, 289 Ga. App. 315, 316 (656 SE2d 922) (2008); *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 83 (653 SE2d 513) (2007) ("Parol evidence is only admissible when any ambiguity cannot be resolved through the application of the rules of contract construction and when such unresolved ambiguity must be resolved by a jury as a matter of disputed fact.") (punctuation and footnote omitted).

[8] *4 G Properties, LLC*, supra

[9] *The Hammer Corp. v. Wade*, 278 Ga. App. 214, 217 (1) (628 SE2d 638) (2006).

biguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it."[10] As stated in *IH Riverdale 1*, amendments to the agreement were authorized if they were in writing and signed by the members holding a majority interest; MCP held a majority interest; and MCP amended the agreement so as to eliminate the cash distribution.[11] There is nothing in the agreement that prohibits MCP from taking that action. We note that "salaries," along with "other compensation," can be changed "by an affirmative vote of Members holding at least a Majority Interest." And Article 9, governing distributions to members, does not state that it is not subject to amendment.

IH argues that the amendment is void because it involves "major decisions" made without its consent. The agreement required the "unanimous consent" of IH and MCP to any "major decision," such as to "[m]odify or amend the project loan and loan documents" and to "[e]nter into contracts which would commit or obligate the Company to expend more than $10,000 of Company funds." In his affidavit, Nolan states that MCP removed him as guarantor of the construction loan without his written consent and paid a $60,000 fee to do so, thereby entering into a contract which obligated the Company to expend funds without his written consent. But the use of parol evidence to construe the contract is prohibited here. The guaranty distribution is not included in the list of "major decisions" that can only be made or amended by unanimous consent. Based on its ownership interest, MCP reserved the authority to amend the agreement.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED JUNE 5, 2008 —
RECONSIDERATION DENIED JULY 23, 2008 ▮▮▮▮▮▮▮

*Hartman, Simons, Speilman & Wood, David L. Pardue*, for appellants.

*Rodgers & Hardin, Richard H. Sinkfield, Phillip S. McKinney, Miller & Martin, Jennifer B. Grippa, Scoggins & Goodman, David L. Rusnak, George N. Sparrow, Jr.*, for appellees.

---

[10] (Footnote omitted.) *UniFund Financial Corp.*, supra at 82. Cf. *Lothridge v. First Nat. Bank of Gainesville*, 217 Ga. App. 711, 714 (3) (a) (458 SE2d 887) (1995) (proper to consider extrinsic evidence to resolve ambiguity).

[11] *IH Riverdale 1*, supra.