**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A2222. GEORGIA DEPARTMENT OF TRANSPORTATION    BO-109
    v. KOVALCIK et al.

BOGGS, Judge.

This wrongful death action appears before us for the second time. In *Ga. Dept. of Transp. v Kovalcik*, 328 Ga. App. 185 (761 SE2d 584) (2014) ("*Kovalcik I*"), we affirmed in part and reversed in part the trial court's denial of the Georgia Department of Transportation ("DOT")'s motion to dismiss on the basis of sovereign immunity. After the case returned to the trial court, the DOT filed a second motion to dismiss on the basis of sovereign immunity, which the trial court again denied, and the DOT has appealed once again to this court. Because the earlier ruling constitutes the law of the case under OCGA § 9-11-60 (h), we affirm.

The relevant facts of the underlying action are set forth in our opinion in *Kovalcik I* as follows:

In January 2006, the DOT awarded a construction contract to Infrasource Paving and Concrete Services, and contracted with Parsons Brinkerhoff Shuh & Jernigan ("PBSJ") to provide construction, engineering, and inspection services for the Project. Under the PBSJ contracts, the firm "shall be responsible for construction inspection," and "[i]t shall be the responsibility of [PBSJ] to provide services to ensure that the project is constructed by [Infrasource] in reasonably close conformity with the plans, specifications[,] and other contract provisions." DOT employee Darrell Williams monitored construction progress, attended meetings on behalf of the DOT, and served as a liaison between the DOT and PBSJ.

Active construction ended in October 2007, and a final inspection was performed in January 2008. On a rainy night in March 2008, Cameron Bridges approached the intersection in Stephanie [Kovalcik]'s car with her as his passenger. The complaint alleges that Bridges was heading south on Peachtree Road, and, intending to turn left onto Piedmont Road, Bridges entered what he believed to be the left-hand turn lane. Instead, the vehicle entered a short left-hand turn lane immediately preceding the Piedmont intersection so that drivers could turn left into a parking lot at the northeast corner of Peachtree and Piedmont. This shorter turn lane was bounded by a concrete divider, which allegedly caused the vehicle to roll when Bridges mistakenly drove into it.

Stephanie died of injuries she suffered in the crash, and the Kovalciks filed suit against the DOT, the City, BCID, URS, PBSJ, and others. The Kovalciks' complaint includes negligence claims against the DOT for allegedly failing to ensure the roadway was safe for use by the public, failing to provide adequate signage or warning of the traffic barriers, and negligently designing the roadway. The DOT answered, asserting sovereign immunity, and following discovery, the DOT moved to dismiss on sovereign immunity grounds. The trial court, in a one-sentence order, denied the motion, giving rise to th[e] appeal [in *Kovalcik I*].

328 Ga. App. at 186-187. We then considered two exceptions to the waiver of the DOT's sovereign immunity under OCGA § 50-21-25: the inspection function exceptions set forth in OCGA § 50-21-24 (8), and the licensing powers exception set forth in OCGA § 50-21-24 (9). Id. at 187-190 (1).

As we noted in *Kovalcik I*, the inspection functions exception provides, in pertinent part:

The [S]tate shall have no liability for losses resulting from: … [i]nspection powers or functions, including … making an inadequate or negligent inspection of any property *other than property owned by the [S]tate* to determine whether the property complies with or violates any law, regulation, code, or ordinance *or contains a hazard to health or safety*[.]

3

(Footnote omitted; emphasis in original). Id. at 188 (1) (a). The DOT argued that the plaintiff's claims rested on its inspection of the plans, not the roadway, which it conceded was a roadway owned by the State. Id. We rejected this argument, noting that "[t]he Kovalciks point to *evidence* that the DOT participated in the inspection of the construction site itself to determine compliance with the plans, DOT guidelines, and completion of construction. Thus, they argue that the DOT's inspection was not merely of the plans, but also of the newly configured roadway itself." (Emphasis supplied.) Id. We "agree[d] that immunity is waived to the extent that the DOT's role included inspection of the State roadway and intersection itself to detect hazards or to determine compliance with laws, regulations, codes, or ordinances." Id. We then noted again, "There is *evidence* that the DOT's role included both approving construction plans and inspecting the physical property for compliance with DOT standards as built in accordance with those plans," (emphasis supplied) before holding:

> Accordingly, because it is undisputed that the roadway inspected by the DOT is owned by the State, the inspection powers exception to State liability in OCGA § 50-21-24 (8) does not, by its own terms, apply to the DOT's inspection of that roadway. This holding is limited to the immunity defense before us, and we do not reach any further questions

4

as to the DOT's actual role in this case or as to the DOT's duty under the circumstances.

Id. at 189 (1) (a).

After considering the inspection function exception, we then analyzed the licensing powers exception to the waiver of sovereign immunity, even though the DOT had not raised this ground in the trial court. Id. at 189-191 (1) (b). This exception provides: "The [S]tate shall have no liability for losses resulting from: … [l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization[.]" Id. at 190 (1) (b).

The DOT argued in *Kovalcik I* "that to the extent the Kovalciks' theory of liability stems from its allegedly negligent approval of . . . design plans, the DOT's decisions during the approval process of the plans qualify for the licensing powers exception." Id. at 190 (1) (b). We found this argument "persuasive" and held that "to the extent that any of the Kovalciks' claims are predicated on the DOT's improper authorization of the plans or the Project, the DOT is immune." Significantly, we noted that our holdings in *Kovalcik I* "are not inconsistent. Simply because DOT may have

5

waived immunity on one claim does not mean that it waived immunity on another claim." Id. at 191 (1) (b) n. 18.

Finally, we concluded that an independent's contractor's agreement to perform construction inspection

> did not take the DOT entirely out of the equation with respect to the Project. The Kovalciks' complaint alleges several acts by the DOT that they contend were wrongful. For example, there is evidence that DOT employees inspected the Project site itself and made recommendations for changes based on perceived errors or flaws. Thus, the mere presence of contractors performing services on behalf of the DOT does not relieve the DOT from potential liability for its own actions.

Id. at 191 (2).[1]

After the case returned to the trial court, the DOT filed another motion to dismiss the entire action based upon sovereign immunity, relying again upon the licensing exception and submitting new evidence to the trial court. The DOT asserted that the additional evidence it submitted demands the conclusion that *all* of its conduct falls within either the licensing functions or inspection powers exceptions to

---

[1]We note that the DOT filed no motion for reconsideration. It filed a notice of intent to apply for certiorari to the Supreme Court of Georgia, but apparently never did so.

the waiver of sovereign immunity because "[t]here is no evidence that any 'hazard to safety' unrelated to construction plans existed or that any employee of GDOT failed to detect such a hazard." In essence, the DOT argued that the safety hazard portion of the inspection powers exception to liability in OCGA § 50-21-24 (8) is modified by the license functions exception to liability of OCGA § 50-21-24 (9). According to the DOT, if the only identified safety hazard relates to the "construction plans designed by URS and approved by GDOT," then the inspection waiver exception to the waiver of sovereign immunity applies.

The new evidence submitted by the DOT consisted entirely of a brief two-page affidavit submitted by a DOT employee, Darrell Williams, whose 85-page deposition was already before this court in *Kovalcik I*. The only substantive averments in Williams' affidavit follow:

> 4. As Assistant Area Engineer, my responsibilities on the project included ensuring that the construction of the Project conformed to and complied with the contract, specifications, and construction plans that had been approved by GDOT, and to inspect the project for safety hazards to the traveling [public] who would travel through the Project while it was under construction.

> 5. When I was assigned to the Project, the construction plans drafted by URS Corporation had been approved by GDOT. It was not a

7

part of my job responsibilities to authorize changes to the construction plans or to require the general contractor or his subcontractors to build the Project in a way not specified in the plans.

6. During the time the Project was under construction, my safety inspections included both ensuring that the [project] complie[d] with the traffic control plan contained in the contract and that there were no dangerous conditions such as uneven pavement or loose gravel in the roadway where drivers might be going. I observed no safety hazards in any of my inspections which were not immediately corrected by the contractor.

7. I last inspected the Project in October, 2007, just before the opening ceremony for the completed project and I observed no safety hazards at that time.

8. I was involved with other active construction projects at this same time and had no reason to inspect after my last inspection. I was not at the final inspection on January 21, 2008.

9. At the time the Project was completed and all construction on Peachtree Road except for punch list items had finished, the completed work conformed to the contract, specifications, and construction plan approved by GDOT.

The Kovalciks opposed the second motion to dismiss by arguing that it was barred by the law of the case rule because this Court reviewed the evidence, including

8

Williams' deposition, when we determined that the inspection powers exception to the waiver of sovereign immunity did not apply. The trial court denied the second motion to dismiss in a brief order stating, "Having considered the record and all applicable law, this Court finds evidence that Defendant independently inspected and acted with regard to the roadway at issue here. To that extent, Defendant has waived sovereign immunity." The DOT again appealed to this court.

> Under OCGA § 9-11-60 (h), any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be. The law of the case rule, though formally abolished, still applies to rulings by one of our appellate courts in a particular case; such rulings are binding in all subsequent proceedings in the same matter.

(Citations, punctuation, and footnote omitted.) *IH Riverdale, LLC v. McChesney Capital Partners, LLC*, 292 Ga. App. 841, 843 (666 SE2d 8) (2008). As we noted in *Kovalcik I*, "We review de novo a trial court's denial of a motion to dismiss based on sovereign immunity grounds, which is a matter of law. However, factual findings by the trial court in support of its legal decision are sustained if there is evidence authorizing them." (Citations, punctuation, and footnote omitted.) 328 Ga. App. at 186.

9

The DOT argues that because it may raise the defense of sovereign immunity "at any time," it may raise it again in a second appeal. It is true that, as we noted in *Kovalcik I*, sovereign immunity is a jurisdictional issue, and "[t]he court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal." (Citation, punctuation, and footnote omitted.) 328 Ga. App. at 190 (1) (b). But even a jurisdictional question may not be raised *again* after this court has already ruled on it. See *Waters v. Glynn County*, 237 Ga. App. 438, 440 (2) (514 SE2d 680) (1999) (no waiver of sovereign immunity; previous finding of Supreme Court of Georgia on appellant's employment status was law of the case and precluded waiver of sovereign immunity); compare *DeKalb State Court Probation Dept. v. Currid*, 287 Ga. App. 649, 654 (2) (653 SE2d 90) (2007) (when first appeal did not analyze or rule on sovereign immunity question, law of the case rule did not prohibit determination of immunity on second appeal).[2]

---

[2]Similarly, "while a void sentence is a nullity and may be vacated at any time, this important legal principle is, nevertheless, subject to the equally well established principles of res judicata and the law-of-the-case rule once the issue has been raised and ruled upon. The [movant] is not entitled to multiple bites at the apple.") (Citation and punctuation omitted). *Little v. State*, 327 Ga. App. 252, 253 n.1 (758 SE2d 133) (2014).

In *IH Riverdale*, supra, we noted that an exception to the law of the case rule "exists where the evidentiary posture of the case changes in the trial court after the appellate court decision." (Citation and footnote omitted.) 292 Ga. App. at 843. This may occur in two circumstances: "First, the evidentiary posture of a case changes when a new issue that the appellate court has not addressed is raised by amended pleadings or otherwise. Second, the evidentiary posture of a case changes when the original evidence submitted is found to be insufficient, and the deficient evidence is later supplemented." (Citations, punctuation, and footnotes omitted.) *Choate Constr. Co. v. Auto-Owners Ins. Co.*, 335 Ga. App. 331, 337 (1) (779 SE2d 465) (2015). Neither of these exceptions applies here, as the original evidence was not found insufficient, and the DOT simply attempts to re-litigate the issue of sovereign immunity. "Given the similarity of the arguments and evidence presented in the current and previous appeals, the evidentiary posture of the case has not changed by the addition of the affidavit." *IH Riverdale*, supra, 292 Ga. App. at 844. See also *Bruce v. Garges*, 259 Ga. 268, 270 (2) (379 SE2d 783) (1989) ("The rule applies because the same parties and issues are involved and the evidentiary posture of the case remains the same. [Cit.]")

In its renewed appeal, the DOT seizes on our observation in *Kovalcik I* that "[t]his holding is limited to the immunity defense before us, and we do not reach any further questions as to the DOT's actual role in this case or as to the DOT's duty under the circumstances." 328 Ga. App. at 189 (1) (b). From this, the DOT infers that it is authorized to make a second attempt to invoke sovereign immunity under the same law discussed in our original opinion. This contention is without merit. We simply noted that our ruling on the issue of sovereign immunity, under the applicable standard of review noted above, was not a ruling on the *merits* of the Kovalciks' case as a whole, as it may be presented when the litigation reaches another stage such as summary judgment or a trial, if any. But the law does not permit the DOT to *re-litigate* the already-decided issue of sovereign immunity, simply by presenting additional argument and evidence on the same issue.

DOT also contends in its brief that our holding in *Kovalcik I* has been modified by more recent decisions of this court. Assuming without deciding that this assertion is accurate, even if a subsequent judicial decision or amended statute changes the law as applied in an earlier appellate ruling, "between the parties to the original decision it remains the law of the case. Any other practice would result in constant relitigation

of issues as the law continually evolves." (Citations omitted.) *Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 787 (1) (456 SE2d 97) (1995).

*Judgment affirmed. Doyle, C. J. and Phipps, P. J., concur*.